5-13-406 Good afternoon, Your Honors. May it please the Court, Mr. Munges? This is an appeal by the State from a ruling of the Circuit Court in St. Clair County in a murder trial, a murder case, excluding or suppressing, depending on how you want to look at it. A certain statement was made by the defendant during a telephone conversation and conversations that he had with his mother and girlfriend. These conversations occurred in an interrogation room at the Belleville Police Department in a room that was under audio and video recording surveillance. Before I get to the core constitutional issue here, I do want to talk a little bit about jurisdiction. The defendant raises a jurisdictional challenge in his answer brief. Of course, this Court has an independent obligation to determine its own jurisdiction, so I'm going to touch upon that briefly at the beginning. The crux of the defendant's argument in this regard is that there's not really anything that's been excluded in this case, and thus there's nothing under Rule 604A for the State to appeal, because there's an alternate means in which the State could present the evidence that was subject to the exclusion by the Court in this case. Defendant cites cases from the Supreme Court where the State had appealed from orders which had, certain court orders which had excluded, in one instance was a crime record, and the Court had ordered the State to actually produce live testimony. And the Supreme Court says, well, we don't have jurisdiction because there's not really an appeal order because the State had a way to present the exact same evidence. You just have to do so through live testimony rather than through the certificate of the crime record. It's an interesting argument, but I don't think that it really works in this case. The reason for that is that there is no exact substitute for the type of evidence that the State is seeking to appeal in this case. The defendant's argument sort of takes kind of two folds. Number one, it was one where the State could present the testimony of the people to whom the defendant called and present their testimony instead. Or alternatively, the defendant had actually confessed earlier in the case during the interrogation. And so that would supply sort of like the same kind of evidence that these prosecutors would make. Two points to be made in that regard. Number one, it's not the same evidence to say that there is obviously a visceral effect to seeing the recording of the defendant from his own lips, say these things emotionally, verbally, the context of it is a lot different than the two witnesses who would arguably be very friendly to the defendant, asking them to relay admissible hearsay. With regards to the defendant's confession, again, while it's certainly obviously good evidence and it is similar to, it's not the same. So I believe that the State would submit that this Court does have jurisdiction to consider this State appeal. It's a particular individualized set of evidence, and they can't be duplicated by any other means, unlike the cases cited by the defendant. Having got to that, the case is really kind of a straightforward Fourth Amendment case. It wasn't always that. In the initial incarnation of this case, the defendant had argued and raised the issue that this evidence should be excluded under Illinois' eavesdropping statute. To be perfectly frank with you, that's probably not a bad argument. Illinois' eavesdropping statute at the time was two-party consent. Clearly, the State was not going to be able to prove two-party consent to these telephone conversations. So at that point, that was where it all started, where it ended up, perhaps presciently by the Circuit Court judge. Ultimately, the rule was actually a right to privacy Fourth Amendment type of issue. That came about actually after this case went up on appeal, when the Illinois Supreme Court struck down the eavesdropping statute in its current form, when people v. Clark. What that did, in effect, really was do away with the two-party consent and the legislative abrogation of the right to privacy, which had been written into the statute. The defendant makes an argument, which I think is an interesting one, and maybe not the wrong one, that, you know, anytime you have a statute that's declared unconstitutional, it reverts to its prior format. But I don't think that it really changes the substance of this case or the appeal. It's still going to come down to the expectation of privacy and the Fourth Amendment as just sort of how the eavesdropping statute was originally written. And there's language in the Clark opinion which supports that proposition, that the right to privacy is sort of the core ingredients of eavesdropping, going back to the common law notions of hiding under the eaves to overhear a conversation. This trial court here made a factual finding that he had an expectation of privacy. That's correct. And it was reasonable. That's correct. And what's our standard of review on that factual finding? Standard review would be de novo, and the reason for that, de novo. On the factual finding? Yes, because it's not contested what the facts are. There's a recording of everything, so, I mean, there's not much to do. Isn't the trial court drawing some inferences here, though, about the nature of the conversation? He said, I want privacy. You know, the police officer said, yeah, and left the room. We know what happened, but in order to reach the determination that factually the defendant in this case expected to get privacy from that conversation, doesn't the trial court have to draw some inferences? I think that that's not incorrect. In fact, this is sort of a mistake. You know, I don't think that's wrong, but I think the fact that there's sort of an inferential stuff in this case, in a way, makes the case a little bit harder from a defense perspective and easier. I mean, this is an important issue, I think, because generally on a motion to suppress or exclude or whatever you want to call it, the trial court's factual findings are first determined under the manifest weight of the evidence standard, but then the court makes a de novo decision about whether or not under those facts found by the trial court suppression was appropriate. And that's to put the law in check. I think that that's a fair statement. I mean, the reason we set forward de novo is largely because of the fact that the actual facts, absolutely the inferences, of course, are under the contest. When we talk about inferences, you have to understand that the inferential nature of the case stems largely from the fact that the defendant didn't testify. And so, you know, the defendant makes, I think, the correct argument that one of the ingredients, if you will, of the expectation of privacy is a subjective expectation of privacy. We don't have that in its prior and impurest form, which would be the defendant said, this is what I thought was going on. This is what I thought was going to happen to me. So in a way, I characterize it with high grief that most of the defendants' arguments are inferential, much as the circuit courts were, because it sort of drew conclusions I think probably not supported necessarily overtly by the record. So that's sort of why I say yes, but, you know, you've got an instance where those inferences don't necessarily apply to support the circuit court's decision, or even it's questionable how much deference should be made to them, given the fact that their inference is drawn sort of from the court's subjective interpretation rather than based upon the record. So there are... From watching the video, I guess, as well. Well, from watching the video, yes. The inference actually, let's just go ahead and talk about this right now. Since the inference, I think, stems largely from particular verbiage used at the time of the interrogations, specifically what had happened was during the course of these three interrogations, there's only one issue here. During the course of these interrogations, the defendant had been admonished a number of times. You're in a room, it's being recorded audio, being recorded video. At one point, the defendant says, I'd like to make a couple of phone calls. And the police say, well, we'll get back to that in a minute. And then a little bit later on is where we get to the important point. He says, hey, can I have a little privacy to make those phone calls? The officer says, and you'll see the video of it, yeah, we'll get to that. And so I don't know if it means yes, you get privacy, or yeah, we'll get to that, or yeah, we'll talk about that later, or yeah, you get to make phone calls. I mean, there's a lot of things that could mean. The circuit court said, yeah, it means you get privacy. Of course, when you start making those quantum leaps, the court's order makes sense at the end, but those are also quantum leaps that the court's undertaking. Well, the officers left the room. And gave him the telephone. Had him bring him the telephone, which would seem to be acquiescing in his request for privacy. All right. We'll grant that. I mean, that's not an unreasonable inference. It's not an unreasonable inference. But let's grant that particular point and then ask ourselves, okay, what does privacy mean when we talk about the subject? Or even a reasonable societal understanding of privacy. I want to make a point here real quick. When you look at the defendant's initial motion, it says that things happen and then the officers give the defendant some privacy and they leave him in the room to make phone calls. If you look at Judge Barrett's civics order, he makes sort of the same comment. He's granted some privacy when made to make the phone calls. Those are not inconsequential slips. Those are, perhaps to go right to sort of the point I've been trying to make, is that there's a difference between privacy, as we understand it, if I may just finish this sentence here, as we understand in the Fourth Amendment, and privacy as laypeople may understand it, where you don't want someone hovering over you while you make phone calls. So that's the point. That's it. Thank you. Thank you. May it please the Court. Counsel. Alexander Munches from the State Appellate Defender Office, representing Kenneth Colsey. Your Honors, as the State discussed, there are several issues in this appeal. I'd like to briefly touch on the jurisdiction issue, and spend most of my time on the Fourth Amendment issue. The only thing I'd like to say about the jurisdiction issue is that the rule in this area is clear. When considering the propriety of an appeal brought under Rule 604A, it focuses on the effect of the suppression order, and not on the nature of the evidence involved. The State's affirmative argument for why this Court has jurisdiction is that this particular evidence has a visceral effect. Your Honor, I respectfully submit that that is an argument about the nature of the evidence involved, not about the effect of the suppression order. Moving on to the Fourth Amendment. This is a case about whether the State may use your words against you when you've explicitly asked for and received privacy. Over a 40-hour period, Mr. Zook was arrested and interrogated three times. He confessed to shaking A.F. during the third interrogation. He knew that he was being recorded. Before placing phone calls to speak with his family and a loved one, he explicitly asked for privacy. In response, his interrogant officer said, yeah. But after the officers ended the interrogation, picked up their materials, and left the room, the camera continued to record him as he placed his private phone calls. Your Honor, the trial court ordered barring the use of this part of the recording should be affirmed. In affirming this Court, we'll do two things. First, we'll give due deference to the trial court's factual finding. In particular, that Mr. Zook demonstrated a subjective expectation of privacy by explicitly asking for and apparently receiving privacy before placing his phone calls. Second, this Court will uphold the trial court's sound legal conclusion. As the society would recognize as reasonable, the interrogating officer's choice to grant Mr. Zook privacy, a choice which gave rise to a humane moment at the end of a 40-hour period. The trial court correctly found Mr. Zook demonstrated a subjective expectation of privacy. As it succinctly stated, Mr. Zook knew that the police were listening, why else would he ask for privacy? On appeal, the State has not overcome its burden and has not shown that the trial court's order was clearly erroneous. Mr. Zook's explicit request for and apparent receipt of privacy demonstrated a subjective expectation despite his custodial setting. In short, privacy means privacy. The trial court correctly inferred that Mr. Zook used privacy in the plain, ordinary, and popular sense. The sense of the word is that privacy is the state of being apart from the company or observation of other seclusion. That's the definition I take from the Illinois Supreme Court in Swiderski. In that case, the court said, this contract doesn't define privacy. What does privacy mean? Let's look to the dictionary. This is a far different definition that the State offers. I suggest that this is the superior one. Now, Detective Isken's admonition to Mr. Zook that the room was audio-video recorded spurred Mr. Zook to explicitly ask for privacy before placing his calls. As the State mentioned, Mr. Zook had asked to make calls previously. At this point, the second time he asked to make calls, he asked for privacy. He knew what was going on, and he wanted privacy. Detective Krause's affirmative grant of privacy, the word yeah, led Mr. Zook to believe he had made private phone calls. The detectives announced the end of the interrogation. They picked up the materials, left the room, and pulled the door behind them. The trial court's factual finding of the subjective expectation of privacy was in accord with the manifest way of evidence. Secondly, the trial court soundly concluded that Mr. Zook had a reasonable expectation of privacy. The test is not whether Mr. Zook chose to conceal his activity. Instead, it's whether the government's intrusion infringes upon personal and societal values protected by the Fourth Amendment. This ultimate question is a value judgment. Here, the trial court soundly concluded that society is willing to recognize as reasonable interrogating officers' choice to grant a suspect privacy. Indeed, the trial court commended the officers' actions. It said, I commend the officers involved. The officer could have, if they wanted to listen, said so. They could have said no. They could have said nothing. But the officer said yeah. After the end of the third interrogation over a 40-hour period, Mr. Zook had confessed to shaking AF and also demonstrated how he shook AF on a mannequin. Only at the end of the interrogation, after the confession, after the demonstration, was he allowed to speak and see, I have a consolation for family and a loved one. Accordingly, society would recognize as reasonable the interrogating officer's choice to grant Mr. Zook privacy. I'll make a separate note. In the state's reply brief, they cite prison and jail cases for why it would be unreasonable to grant a suspect privacy. The rationale of this case is security. On record, there's no evidence that it's a police department policy for security. There's no record that the statutory policy behind filming interrogations for these types of crimes has to do with security. In fact, there's the opposite implication on the record. In the first interrogation, it ends abruptly, mid-call, with Mr. Zook on the phone with his mother. If security was at issue, you would think that that first interrogation would record the entire conversation. It doesn't. In sum, the state may not use your words against you when you have explicitly asked for and received privacy. Privacy means privacy. In addition, society recognizes as reasonable the interrogating officer's choice to grant Mr. Zook privacy. Accordingly, this court should affirm the trial court order behind the use of this recording. Are there no questions? Thank you. I just want to clear your mind. When I mentioned on the jail case, I do also mean explicit in the requirement that I'm not saying this is like those cases, exactly factual. The point I was attempting to make was that, you know, there are expectations of privacy that we understand in the home or in the phone, like the Katz case, things of that nature in a trial. And then at the other end of the spectrum, there is that lowest level sort of expectation of privacy in jail. This is sort of the greater. It doesn't, obviously, it's not exactly per se the jail cases, but the defendant is in an interrogation room, confessed to at least manslaughter, crash murder, you know, and he's obviously not free to leave. So if you're not in jail, he's certainly not sitting in the comfort of his home, you know, watching TV while there's a recording of this and listening to him. And I think it all sort of plays into the second aspect of the Katz analysis of what society is going to consider to be a reasonable expectation of privacy. So just so that I just want to make that clear that I wasn't making that point, that they are the same. Again, when we talk about subjective expectation of privacy, you know, I don't want to belabor this point any more than perhaps I already have. I just do want to emphasize the fact that the subjectiveness comes from a particular sort of deficit of information rather than abundance of it. It is the defendant's burden to establish the Fourth Amendment violation, not the state's, to counter inferential notions of it. So, you know, when I make the point to the court that, well, we talk about privacy and privacy is sort of being projected in the sense that we don't want, oh, you want us to leave the room, you want to make a phone call. Again, there's nothing on the record to show that the defendant believed or asked or was under any impression at all that that particular use of the word, which as I've already demonstrated in the pleadings of the parties in the court, means get out of the room while I make a call so you don't have to watch me weep on the phone while I talk to my mother and my girlfriend. There's nothing to indicate that there was, I mean, again, we're talking about a room that's under constant recording. It's not a tape recorder placed in front of the defendant that you press play or stop. You know, it may have been made clear, I don't really know the way, I think from an objective standpoint, that an individual would think that anything has changed other than the fact that the officer has left the room. If the defendant had some alternate idea of things, they're left unspoken at this point. From the societal standpoint, again, I've discussed how that kind of ties into what I just said about the particular milieu in which these interrogations are taking place, conversations are made, he's in the same room, none of the circumstances have changed. And I believe that when it comes right down to it, the court found privacy to be rather broadly drawn under the various set of circumstances that would provide factual support. Privacy was the magic word. And so the court's, and so the officer's sort of noncommittal yes to that, and then leaving the room, establishes only that, and it doesn't establish that there was any other violation of the defendant's privacy rights beyond that. It's certainly no argument to me that they did so intentionally. This recording is going on and on and on and on. So it's our position, it's the state's position, that when you examine this under the Fourth Amendment aspect, that the defendant did not have the expectation of privacy as delineated in the chance test. And we would ask this court to reverse the judgment of the circuit court and remain in the subject. Thank you. Thank you, counsel. In case you would have taken that advisement, you would be notified of due course if you're excused. And the court will remain in recess until December.